Good morning, your honors. May it please the court, my name is Alan Dubois and I represent the appellant in this case, Kendrick Crawford. In this case, the government sought to increase Mr. Crawford's relevant conduct by a factor of 10 by introducing testimony from two drug addicted confidential informants who were working off charges and they filtered that proceeding in this way, the government insulated this information which would have the effect of doubling Mr. Crawford's sentence from any type of meaningful review or challenge by the defendant. In effect, the government was playing what amounted to a game of telephone in which the C.I.'s whispered in the ear of one officer who then told another officer who then told the court and who knows what came out was the same thing that went in. The government's reliance on this type of double hearsay on an issue with such momentous importance and such high stakes betrays a casualness I submit that borders on arrogance. By presenting evidence through witnesses who are so far removed from its source, the government basically erected an impenetrable barrier between the defendant and vast fertile grounds of cross-examination that he simply couldn't get to. You had the chance to demonstrate, didn't you, that Lotta and Reddy were suffering from their own addictions and that they were compensated informants. That's true, Your Honor. Weren't you able to go at them and the district court didn't limit you in terms of indicating their compensated status or the fact that they had long-time cocaine addictions? Well, he didn't limit us in the sense that if someone was trying to build a treehouse without any tools, well, you can go ahead and try to build a treehouse, but it's going to be hard without the tools to do so, and what Mr. Crawford couldn't do was cross-examine the officer who took the statements. Did you try to get Lotta and Reddy on the stand? We did not try to get Lotta and Reddy on the stand. As far as I know, though, the government certainly knew where they were as the officer testified. Of course, the burden is on the government to prove its case. We have no burden. Why didn't you try to get Lotta and Reddy at the hearing? Frankly, I don't know whether we knew where they were. I don't know, you know, why— Did you make an attempt? I don't know, Your Honor. I don't know. Wouldn't—I mean, wouldn't that have been—if that avenue was open to you and you didn't pursue it? I mean, I think— I mean, that would have been better than even than having Nesbitt. Well, I think—a couple things, Your Honor. First of all, I think there's nothing in the record to show that we—whether we attempted or not, whether we could have. The government certainly never argued, well, they were just as equally available to the defendant. No, but you're complaining here about, you know, double hearsay. The question that has suggested itself to me was whether there was some effort made on your part to bring Lotta and Reddy there. Well, I can't represent one way or the other. There may well have been. I just—I can't represent— But there's no evidence. There's no evidence as far as I know in this record as to what efforts we made. You know, frankly, I can't recall a case in my experience where the defendant would do something like that, you know, especially because the burden relies on the government. And I think, you know, there was certainly no suggestion that the district court was influenced by that fact. The district court relied on three things. First off, that these C.I.s had performed reliably in the context of controlled buys, that at least Lotta had some— We would have to rule the district court was clearly erroneous? I think that's correct, Your Honor. In terms of his findings as to drug quantity? Well, I also think that this court could inquire as to whether the procedure here was so fun fundamentally flawed and unfair that it simply wasn't— The bottom line standard is we'd have to find clear error. That's correct. However you got to that point, I think, Your Honor, we would submit that this procedure was—or this outcome was flawed, both in terms of his procedure and in terms of his outcome. And, of course, the procedure influenced the outcome. Because— Or was it clearly erroneous? It's clearly erroneous for a number of reasons, Your Honor. First off, the record is clear that these C.I.s had never given historical information in any other case. The officers' only experience with these witnesses was within the very controlled context of a controlled buy under which they were supervising the witnesses, and they could observe them, they could double-check, they could verify whatever they did. I thought the testimony was that Mr. Beckett had extensive experience with both C.I.s. He had, but not in the context of historical reports of information. So the fact that— What does that mean? Well, they had never told—he had only observed them in the course of their controlled buys. They had worked together— He never relied on them to— He had never relied on them to say, like, five years ago, Joe Blow sold me a kilo of cocaine. They had never provided that kind of information. And that's why this is important, and this is why our inability to cross-examine either the witnesses or the agent who interviewed them is critical, because the fact that they were reliable in one context does not mean that they were reliable in a very different context. Well, if the agent who—I'm not sure that I understand the triple hearsay or whatever you want to call it. We're only going with double, but— The double hearsay factors into that, because they still were going to be historical witnesses, and they're still not testifying themselves, some agents testifying about them. The agent could have, or perhaps could not have, given some corroboration that would add some kind of assurance that this historical information was accurate. Were these witnesses, when you talked to them, agent, were they confident in their report to you? Did they have any corroboration, other witnesses who can verify that these historical facts  Well, presumably, that would be in the report. I mean, one can hypothesize, at least, a witness— Or they could have been left out of the report. In exactly the same position as the witness here, who debriefed these CIs. Well, you would be amazed at how much better officers' testimony can get in trial, and how many gaps you can find in the officers' reports. I mean— Well, then you're in a better position here. Perhaps, perhaps not. All they had was—all this guy had was a report. He couldn't elaborate on it. Perhaps, perhaps not. You just said that—well, you just, you posited to me, you'd be surprised how much better the testimony gets at trial than it is in the report. Better and not necessarily— So all that this man could testify to was in the report. Better and not necessarily credible, Your Honor. And also, you know, there's another key factor here, and I do think we don't have any—there's nothing in this record, no track record, no corroboration, no history that either of these women could be trusted to give historical information. That's simply beyond the officer's kin, beyond their experience with either of these two women. So if we had the officer testify—well, of course, it would have been better to have the CI testify, but the government tends not to do that. But even if we had the officer testify, it's very unclear how well, if at all, Officer Nesbitt even knew these women. He was talking to them on the telephone. One line of cross-examination would be— Well, Beck knew them, didn't he? Beck knew them, but if Officer Nesbitt didn't know them and he was calling them on the phone, how did he even know who he was testifying? How did he even know who he was speaking to? How would he know that there was anyone else in the room with him? Were they high at the time? Were they confident? Were they hesitant? Were they offered any promises or inducements for their testimony, given the fact that they were both working off charges? All of this fertile ground for cross-examination— If Beck had had extensive experience with them— Excuse me, Your Honor? Would Officer Nesbitt need to know them if Beck had had extensive experience with them? I think he would need to know them to verify their identity, to identify—to verify what they sounded like when they were in control of their faculties versus when they might not have been in control of their faculties. And I think— Is there any question about their identity? There is a question about their identity. Officer Nesbitt wasn't here to say, here's how I knew this is who I was talking to. Do you think there's a question as to whether he was even talking with Reddy and Latta? I don't think there's any proof that he was. I really don't. Did you raise that point? We did. We argued that at the hearing. There's no—what did you just say? There's no verification that Officer Nesbitt was actually talking to Latta and Reddy. Who else would he have been talking to? I don't know, Your Honor. I mean, you know, nor does the court. You know, there was no visual identification, no indication that Officer Nesbitt knew what they sounded like, no indication how he got their phone number, no indication that he knew this was with people to call. And this is the point. Why not get Latta and Reddy to the stand? I don't— I mean, why not try? I don't know, but I also don't think that's our burden. I think it's the government's burden to prove by a preponderance. And you know, perhaps if we had— Well, it's certainly in your interest. It may well have been, Your Honor. And again, I can't— The government put on this evidence, and it's certainly in your interest or very much in your obligation to counter it or something. You're not asking us to find that the double hearsay is per se unreliable, are you? We're not, Your Honor. Well, I think the trial judge credited the credibility of Beck, who Nesbitt relied upon. And we don't question Officer Beck's credibility either, as far as it goes. I mean, yeah, he said that, yeah, they had performed reliably on controlled buys. Fine. We can accept that. What Officer Beck couldn't testify to was, how were they the day that they were—that they had this interview? I mean, one of the difficulties I have is this constant pressure being brought to make sentencing proceedings like trials. The federal rules of evidence say that these—there's a section of the federal rules of evidence saying these rules don't apply to sentencing. And yet we have case after case where people are trying to convert sentencing hearings and make them more and more like trials. And I thought the whole point of a case like Gall, which I thought was probably one of the most useful cases that the Supreme Court has ever handed down, was to place a greater degree of discretion in district judges with respect to the handling of sentencing generally. And if there's one point that emerges from it, it's that trial courts have broad latitude and discretion in their sentencing determinations. And I just worry with what you're asking us to do, it's going to get all sorts of challenging, all sorts of challenges to every factual determination on the grounds that there's some kind of hearsay or double hearsay. I mean, it bottoms down to a credibility determination of Mr. Beck, and the district court says, well, look here, Beck and Nesbitt have worked together for two and a half years. Nesbitt made contemporaneous notes of his conversations with Reddy and Latta. These reports and notes were not only contemporaneous, but they were quite detailed. Now, that seems to me like your classic sentencing judge call. And, you know, if he hadn't given you a chance to go at it, I'm still mystified as to why Latta and Reddy were not, if you had all these questions, why you wouldn't bring them to the stand. And perhaps you didn't bring them to the stand because you were quite afraid of the fact that they would corroborate what Beck was saying. Well, Your Honor, a few— It was a strategic decision, wasn't it? I have no idea, Your Honor. Well, where else would it have been? We couldn't find them. Did you ask where they were? Your Honor, again, I don't know. That's outside the record. Is that important? It may have been, but I can only deal with the record that's before the court, and that point was simply not raised by either party. Why should we be reversing a district judge's credibility finding when you didn't make an effort to go at it in the most logical way? Well, because this was an extraordinary case in many ways, and I think in— speaking for the trial lawyer's thought process, I can say probably with a fair degree of certainty is she went into that hearing thinking the burden is on the— You have to look at a sentencing proceeding as a whole, too, and the district judge here— you know, sometimes district judges, as all do, sometimes they're a little quick on the trigger, and sometimes they make mistakes. This person—this district judge seemed to be fair about it. He reduced the years of relevant conduct. He shrank them. He sentenced at the bottom of the guideline range. Procedurally, he gave you every chance to go at louder and ready. You know, he's— At some point, you not only have to consider the specific issue, but you have to look at the sentencing proceeding with a wider lens. I don't see that the district court cut you off. No, Your Honor, and our problem— And he gave you some—you know, he gave you some calls that could have gone either way. He made those calls in your favor. Your Honor— And he didn't cut you off, and you didn't try to bring louder and ready before the judge. Your Honor, I do agree you have to look at the sentencing procedure as a whole, and you have to look at what the effect— If this court were to put this stamp of approval on this type of approach, what that would do. If the government can insulate the sources of its information through double or triple hearsay, that is not fair to the defendant. It does not advance the search for the truth in any way. It does not promote respect for the court, but worst of all, if the government can do this, why wouldn't they? Why wouldn't they the next time—the record is clear. They said, Officer Nesbitt— We're not saying that the government can do it. We're asking whether a district court, considering the circumstances as a whole, committed clear error in its drug quantity findings, and in relying on Mr. Beck, given what the indicia of reliability were here, when louder and ready were never—there was no attempt— Officer Nesbitt was available. He was not called for reasons known only to the government. Now, I put it to you this way. I would submit that if we were in— Did you make an effort to get Mr. Nesbitt called? Usually we can't get— No, no, no, don't. You're going after the district judge here, and I want to know—you're talking about double hearsay, and I want to know whether the declarants, the two declarants, whether you made any effort to bring them, because it does seem to me odd that you'd be attacking a district judge for crediting Mr. Beck at a time when you're not making an effort to bring the declarants, the actual declarants, before the court. That troubles me. Whether it be louder and ready, or whether it be Nesbitt, or what have you. Your Honor, I do understand— Do you understand my concern? I do understand your concern, Your Honor, and like I say, I mean, I hate to sound like a broken record, and I see my time is up, but the only thing I can tell you is that I do not know whether we did make an effort. It's not in the record. It may not have ever had any reason to appear in the record. Certainly not unusual for us to have very much difficulty— There's one reason that suggests itself that you didn't make a record, is because the more people that came on, the more Mr. Beck would have been supported, and I'm worried about sandbagging. Well, I'm worried about sandbagging. Well, the government is the one doing the sandbagging here, Your Honor, and it's not the defendant. The government is the one who's in control of these witnesses, who knows where they are, and has them in their control and under their jurisdiction. But you have to ask them. Or we could say the government's burden is to produce the evidence. If they're going to try to do it through double or triple hearsay, they're going to take a risk that a judge might say, hey, you know what, that's not good enough. You have to declare it. Can I ask you this question? Yes, Your Honor. Did you make this objection in the district court? Excuse me, Your Honor? Did you make this objection in the district court? In this court? In the district court, in this case. Yes. Well, I guess it depends on what is your concern, Your Honor. I think it's clear that we were contending. Did you object that this witness was not good because it was triple hearsay or some of the other reasons? Yes, we did mention that. No, no, no. Did you object to his testimony on those grounds? I don't know, Your Honor. As I read the record as a whole, I certainly considered that we had contested the reliability. But examined the witness on that point. Right. And contested the reliability of the evidence that the court was relying on, which the reason it was unreliable is it was based on multiple levels of hearsay. Right. No, I understand that. But then did you say to the district judge, you can't look at any of this because multiple grounds of hearsay? No, because we don't think he couldn't look at it. Well, you see, there you go. I mean, we just don't think it's worth much. And it's also not. It might not be worth much. But that's the call for the district judge to make. I don't think so, Your Honor. I think there becomes a point. And I'm sorry. If there is a point where it's reversible error, then you should have said. This isn't discretionary. This is reversible error. I mean, I have a lot of sympathy with you that you couldn't bring in the officers in yourself. And you couldn't bring the CIs in yourself. But you surely could make the objection. Well, Your Honor, the government has certainly not argued that this issue wasn't preserved. They engaged it on its merits. I don't think this was something that occurred to either party, that this issue had not been fully engaged and was not before the district court. OK. So I understand I have a little time left for rebuttal. Thank you, Your Honor. Thank you. Thank you, sir. Good morning, Your Honor. We would be pleased to hear from you. My name is Yvonne Watford McKinney. I represent the United States. And Your Honor, we do believe that the court followed the right procedure, that the court made the right call in this case. This court has held, in the Smith case and in the Terry case, that hearsay alone can provide sufficiently reliable evidence of drug quantity. The district court can consider uncorroborated hearsay so long as the defendant has an opportunity to rebut or refute that information. And in this case, certainly the defendant had an opportunity to refute that information. But their objection to the evidence went to whether or not it was reliable. But this court has held that it's not enough to say that the evidence is not reliable. If the defendant believes the evidence is unreliable, then he has to articulate reasons why. And he's got to establish facts supporting his position that the evidence is untrue or inaccurate. And in this case, defense counsel never said the evidence was untrue. And she never said that the evidence was inaccurate. What she said was, it's not reliable because these two women are drug addicted. And as far as that goes, they've not done what the law requires them to do in this case. The judge considered the testimony of Officer Beck. Officer Beck did have history with both of these women. Made prior buys. These women had made prior cases for him. And so their reliability had been established well before the October interviews that Agent Nesbitt had with both of them telephonically. And the judge did consider that they were telephonic interviews. He did consider that Agent Nesbitt was not there. He credited Officer Beck's testimony. And he credited Officer Beck's assessment of the reliability of these women. And so after considering everything, the judge said, I believe that the women provided truthful information to the officers. And he was able to calculate the amount of drug quantity that was based on not only the buys, but the historical information provided by those women and, I think, one other informant. So we believe the court followed the right procedure. In this case, we believe that the quantity finding was not clearly erroneous. And I would also point out that the judge did indicate that if he had made a procedural error, that he would still impose the very same sentence as a variant, alternative sentence. If the court has any questions, I'd be glad to answer them. We have no questions. Thank you. Mr. DuBois? Thank you, Your Honor. First, just to address Judge Moss's question on 21-85, our attorney did say, for the record, I objected to the testimony being used against Mr. Crawford without her being present in court, without being present in court subject to questioning. That's after the testimony's been given. Excuse me? That's after it's been given. You don't need to preserve it. You do it before, right? Well, he's saying, and then he's saying, I certainly object to the double hearsay that's been presented. So there was a- It seems to me this is one of those issues that's kind of emerged full bloom on appeal. We get sometimes stray statements that people think, well, we sort of objected. And what you get is kind of a glancing statement that might or might not be an objection. But that's, you know, it's important, I think, to just be minimally fair to a trial judge. And I've never been a trial judge, but I can tell you one thing. It would really frost me to be reversed on a point that I never was given a chance by counsel to consider. That would frost me. And I understand, Your Honor. I totally agree with that. I think, though, in this case, you know, we also need to be fair to the trial attorney. And I think the trial attorney did present this issue. And I also think, and the point I really want to make, and just leave the court with, excuse me, Your Honor, you have a question? No, I don't. What I really want to leave the court with is this, is that decisions from this court obviously have consequences. And if we, or if this court were to sanction this type of procedure by the government so that they can routinely submit evidence in this kind of attenuated fashion. No, we're not sanctioning. It's very particular. It has to do, you know, with a number of things, which is Beck's experience with Nesbitt, Beck's experience with the CIA, the detail in Nesbitt's notes, the fact that they were contemporaneous, the fact that the district judge gave you a chance to go it louder and ready on the basis of their status and their prior drug histories. And it isn't, nobody's thinking of doing any broad sanctioning of things. These things boil down to particulars. And Your Honor, I think in this case, the particular is this. If we can abstract this situation out of the courtroom and put it into real life, if any one of us were going to buy a car and the car dealer said, well, yeah, look at this great car. The owner told me that a mechanic told him that this car is in great mechanical shape. No one in their right mind would think that that's good enough, that we can just buy that car. You would certainly check it out. You would go to the mechanic or have the car checked out yourself. Were you at the sentencing hearing? I was not. You were not. But because, I didn't think you were. You're a very able attorney. But I, the concern here is that I do think a defense has an obligation to do certain things. And in fact, that serves the interest of clients fulfilling those obligations. One was to lodge an objection. Another was to get the declarants before. But all along the line in this hearing, the district judge is, as far as I can see, gave you an opportunity to do pretty much what you wanted to do. But your obligation on the other end wasn't met. Your Honor, I certainly will carry that message back to our trial attorneys because it's important that they know this. And finally, the last point I would like to make is our main objection is not so much with what the district court did or how he conducted the hearing, it's with the material he was provided by the government. Our objection is to what the government presented and its insufficiency to show in any reasonable, meaningful way that the evidence presented by these women was reliable to the extent that you can double his sentence at 300 grams of crack based on historical information that they had never provided before and Officer Beck knew nothing about. That's all our point is. And we would argue that that is insufficient. I'm going to ask my co-panelists if they have any... Thank you, Your Honor. We thank you. We'd like to come down and greet you and then we'll take a brief...
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd